OPINION OF THE COURT
Max Bloom, J.
Petitioner, Subcontractors Trade Association, Inc. (STA), an association of subcontractors and other firms involved in the building construction trades, brings this article 78 against the Director of Construction of the City of New York and various city agencies to declare illegal and contrary to law, a provision contained in certain construction contracts upon which the city is seeking bids. Respondents cross-move to dismiss the proceeding upon the ground that the petition is insufficient in law.
It is needless here to recount the financial stress to which the city has been subject in recent years. By consequence, all construction save only the most urgent has been deferred. Similarly, it is unnecessary to do more than mention the depressed state of construction throughout the country.
The Congress, conscious of the need for action in order to stimulate the economy, enacted the Federal Public Works Employment Act of 1976. (US Code, tit 42, § 6701, et seq.) Under the terms of the act, the Secretary of Commerce was authorized to make grants to State and local governments for construction projects approved by him. Under the 1976 act, the secretary, acting through his Economic Development Agency (EDA), approved grants in excess of $100,000,000 to the city.
Under the rules and regulations governing the Federally sponsored local works program, EDA may suspend or terminate any approved project in the event that the city fails to abide by the terms of the grant. The city was conscious that, by reason of EDA’s power to terminate or suspend approved projects, it might find itself with half-completed projects which, thereafter, it would be required to complete out of its own inadequate resources. It sought to protect itself against this eventuality by imposing the onus upon the prime contractor in the event that the suspension or termination resulted from the acts of the contractors. It provided, in all of the contracts let under the program, that if the cancellation or *919 reduction in funding resulted from a breach by the contractor, the contractor would be liable for all damages flowing from the breach, even though those damages exceeded the price payable under the contract. The only lid provided was that such damage could not exceed the total EDA grant for the entire project. Prime contractors have included a parallel clause in all subcontracts.
In 1977 Congress amended the act to include a provision that no grant would be made for any local public works project unless satisfactory assurance was given "that at least 10 per centum of the amount of each grant shall be expended for minority business enterprises” (US Code, tit 42, § 6705, subd [f], par [2]). Since both petitioner and respondents represent that they are deeply committed to the purposes of the 1977 amendment, neither presents the constitutional question posed by the utilization of quotas to confer rights on the basis of race or color (Boston Chapter NAACP v Beecher, 504 F2d 1017, cert den 421 US 910; cf. Bakke v Regents of Univ. of Cal., 18 Cal 3d 34, cert granted 429 US 1090; Alevy v Downstate Med. Center, 39 NY2d 326).
In any event, STA contends that the contract clause which expands the liability of the contractor tends to frustrate the purposes of the Federal Local Works Act by limiting the number of bidders on projects inasmuch as the number of contractors and particularly minority contractors, for whom surety companies will write performance bonds with this enlarged liability is limited, and by increasing the cost of the projects, since the performance bonds fix a much higher potential penalty for which bonding costs are correspondingly higher. Moreover, asserts STA, the expanded liability provision makes it virtually impossible to implement the 10% minority business enterprise requirement, inasmuch as the number of qualified and financially responsible minority businesses in the construction industry is so limited and the danger of liability resulting from their employment is such that many responsible prime contractors have refused to submit bids on approved projects. Indeed, it is apparent that STA or someone in an equivalent position, utilizing the 10% minority business enterprise clause as a wedge, has made complaint to Washington, D. C. for on November 3, 1977, the Chairman of the House Subcommittee on Minority Enterprise and General Oversight sent a letter to the Mayor raising objection to the inclusion of the expanded liability clause in *920 contracts entered into with prime contractors and on November 21, 1977, EDA issued a memorandum asserting that it did not require such a provision in agreements on projects undertaken under the Local Works Act.
STA contends that the action is arbitrary and capricious and violates the public policy of the State which requires that the city’s procedure in the letting of contracts for public works projects shall be such "as to assure the prudent and economic use of public moneys for the benefit of all the inhabitants of the state and to facilitate the acquisition of facilities and commodities of maximum quality at the lowest possible cost” (General Municipal Law, § 100-a).
The application, although framed in mandatory terms and seeking a judgment directing the excision of the expanded liability clause from all contracts funded under the Federal Local Public Works Capital Development and Investment Act of 1976, as amended, is in reality an application to review the determination of the Director of Construction to include it. As such, the rationality of the action becomes the basis for review. (Pell v Board of Educ., 34 NY2d 222; Matter of Colton v Berman, 21 NY2d 322.) Rationality, however, is not an abstraction. It is to be determined in the context of the circumstances giving rise to the act. An act, rational under one set of circumstances, may be wholly irrational under another.
Thus, whether the inclusion of the clause objected to was arbitrary or capricious must be viewed in the light of the circumstances in which the city currently finds itself.
It may well be that in the past the city could have afforded the luxury of having street reconstruction, sewer, building rehabilitation, bridge rehabilitation and other Federally funded reconstruction and rehabilitation projects terminated when only partially completed. It could then have dug into its own treasury and completed the projects. One need only read of the pleas of city officials to the Federal authorities for financial aid in meeting the day to day needs of the city to know that this cannot now be done, nor is there likelihood that the city will be able to do it in the reasonably forseeable future.
On the other hand, it is clear that the inclusion of the clause in question may increase the cost of projects, may tend to put people to work more slowly than if it were not included *921 in construction contracts and may weigh against the most effective use of the minority business enterprises clause.
Whatever decision was made by the Director of Construction necessarily involved a careful weighing of the interests involved. That, however, was a decision vested with the city. In exercising his discretion, so as to afford the city the protection which the Director of Construction felt it must have in the circumstances, it cannot be said that he acted irrationally or that he was arbitrary or capricious.
The objections voiced by the Federal authorities do not detract from the rational basis for the expanded liability clause. Indeed, they could readily solve the problem by having EDA amend the forfeiture clause of its rules and regulations so as to make expanded liability unnecessary. They have not elected to do so.
Nor does the action of the Director of Construction violate section 100-a of the General Municipal Law. The policy laid down in that section is for the protection of the city. It was not enacted to benefit those who seek to deal with it (Carroll-Ratner Corp. v City Manager of New Rochelle, 54 Misc 2d 625, affd 36 AD2d 795). If, to procure insurance against open streets, unfinished schools and public building reconstructions and other half-done projects, it pays a somewhat higher price for these construction jobs than would otherwise be the case, it is no more to be faulted than it should be when it obtains other types of insurance.
In last analysis, it cannot be said that the trade-off of interests inherent in the inclusion of the expanded liability provision in contracts let under the Federal Public Works Employment Act of 1976, as amended, had no rational basis in fact or was arbitrary, or capricious. The application is, therefore, denied. The cross motion is granted.